UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOELLEN ROUSSE LYTLE                    CIVIL ACTION

VERSUS                                  NO. 23-7230

WALMART, INC.                           SECTION M (5)

## ORDER & REASONS

Before the Court is a motion to dismiss plaintiff's punitive damages claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendant Walmart, Inc. ("Walmart").[1] Plaintiff Joellen Rousse Lytle responds in opposition,[2] and Walmart replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants the motion because Louisiana law, which prohibits punitive damages in this type of case, applies to Lytle's tort claim.

## I. BACKGROUND

This case concerns a slip-and-fall accident. Lytle, a Florida domiciliary, alleges that on May 16, 2023, she was shopping at a Walmart store in Harvey, Louisiana, when she "slipped on a watery and gel-like substance … located on the floor and fell to the floor hard, causing her substantial bodily injuries and saturating her clothing …."[4] Lytle filed this suit against Walmart seeking compensatory and punitive damages.[5] She alleges that Walmart, which is incorporated in Delaware and maintains its principal place of business in Arkansas, is liable for punitive damages

---

[1] R. Doc. 8.
[2] R. Doc. 14.
[3] R. Doc. 15.
[4] R. Doc. 1 at 2.
[5] *Id.* at 4-7.

under either Arkansas or Delaware law because Walmart made corporate-level decisions in Arkansas regarding its safety policies and procedure and the design and placement of its produce and storage systems.[6] Walmart filed the instant motion to dismiss Lytle's punitive damages claim, arguing that Louisiana law applies rendering punitive damages unavailable.[7]

## II.  LAW & ANALYSIS

### A. Legal Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[6] *Id.* at 1, 6-8.
[7] R. Doc. 8.

2

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain

matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

Louisiana law prohibits the award of punitive damages unless they are expressly authorized by statute. *Arabie v. Citgo Petroleum Corp.*, 89 So. 3d 307, 313 (La. 2012). In contrast, both Arkansas and Delaware law allow the imposition of punitive damages in tort cases *See* Ark. Code § 16-55-206; *Jardel Co. v. Hughes*, 523 A.2d 518, 528 (Del. 1987). Walmart argues that Louisiana law applies here.[8] Lytle, on the other hand, contends that either Arkansas or Delaware law governs whether she can obtain punitive damages.[9] The Court must resolve this conflict.

In diversity cases, such as this one, the law of the forum state, here Louisiana, governs the choice-of-law analysis. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Louisiana Civil Code article 3546 prescribes how courts are to choose the law that applies to a multistate tort in determining whether punitive damages are available:

> Punitive damages may not be awarded by a court of this state unless authorized:
>
> (1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or

---

[8] R. Doc. 8.
[9] R. Docs. 1; 14.

4

> (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

"Thus, punitive damages may be awarded when they are authorized by the law of the state or states with two or more of the following contacts: (1) place of the injurious conduct; (b) place of the resulting injury; and (c) place of the defendant's domicile." *Davidson v. Wal-Mart La., LLC*, 2019 WL 13218147, at *3 (W.D. La. Sept. 10, 2019) (citing *Arabie*, 89 So. 3d at 314).

Because Lytle's injury occurred in Louisiana, and punitive damages are not authorized by Louisiana law, subparagraph (2) and the second potential contact listed in subparagraph (1) of article 3546 are not applicable. Accordingly, to recover punitive damages, Lytle must demonstrate that such damages are permitted by the law of the state where the injurious conduct occurred ***and*** the law of the state where Walmart is domiciled.

**1. Whether punitive damages are authorized by the law of the state where the injurious conduct occurred**

Lytle alleges that Walmart made corporate-level decisions in Arkansas regarding its safety policies and procedure and the design and placement of its produce and storage systems that resulted in her accident.[10] She argues that this consideration favors the application of Arkansas law because her pleading satisfies the predicate the Louisiana supreme court established in *Arabie*, providing that "'management or corporate level decisions must outweigh tortious activity which occurs locally in order for the location of the corporate or management decisions to be considered the locale of the injurious conduct.'"[11]

The decision in *Davidson v. Wal-Mart Louisiana, LLC*, is instructive on this point. In that case, the plaintiff sued Walmart after she was injured by falling soda bottles inside a Walmart store. She sought to amend her complaint to include a punitive damages claim under Arkansas

---

[10] R. Doc. 1 at 6-7.
[11] R. Doc. 14 at 4 (quoting *Arabie*, 89 So. 3d at 317).

law, alleging that corporate-level decisions made in Arkansas regarding shelving design and safety caused her injury. *Davidson*, 2019 WL 13218147, at *1-4. The *Davidson* court found that these allegations were sufficient, at the pleading stage, to satisfy *Arabie*'s proclamation that corporate-level decisions must outweigh local tortious activity.[12] *Id.* at *4. Further, the court noted that it did not need to consider whether Delaware's punitive damages laws applied because that state's only connection to the case was that Walmart is incorporated there. *Id.* Indeed, neither the injury nor any tortious activity occurred in Delaware, and the plaintiff did not argue otherwise. *Id.*

The result is the same here. Lytle has alleged that Walmart made corporate-level decisions in Arkansas that she claims led to her injury. Thus, as in *Davidson*, Lytle has, at this pleading stage of the case, made sufficient allegations to satisfy this prong of the article 3546 analysis with respect to the potential application of Arkansas's law on punitive damages. But she has not alleged, nor argued, that any injury or tortious activities occurred in Delaware, and so Delaware's punitive damages law will not apply and need not be further analyzed.

### 2. Whether punitive damages are authorized by the law of the state where Walmart was domiciled

In a conflict-of-laws analysis, the domicile of a juridical person, like Walmart, is determined by Louisiana Civil Code articles 3518 and 3548. *Arabie*, 89 So. 3d at 314. "Under Article 3548, juridical persons domiciled outside Louisiana, as is [Walmart] under Article 3518,[13] who incur a delictual obligation, *shall* be treated as a domiciliary of Louisiana if appropriate under

---

[12] The *Davidson* court cautioned that the plaintiff "must ultimately prove that such conduct did occur in Arkansas and that it did outweigh any local tortious activity." *Id.* at *4.

[13] Article 3518 provides:

> For the purposes of [the Civil Code's conflict-of-laws provisions], the domicile of a person is determined in accordance with the law of this state. A juridical person may be treated as a domiciliary of either the state of its formation or the state of its principal place of business, whichever is most pertinent to the particular issue.

La. Civ. Code art. 3518.

6

the principles contained in Article 3542." *Id.* (emphasis original). Article 3542 provides that a tort claim "is governed by the law of the state whose policies would be the most seriously impaired if its law were not applied to that issue."

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

La. Civ. Code art. 3542.

With these Code articles in mind, the Louisiana supreme court has identified eight nonexclusive factors for trial courts to evaluate in determining if it is appropriate to consider a juridical person either a Louisiana domiciliary, or the domiciliary of another state (here, Arkansas), in a tort action:

> (1) The pertinent contacts of each state to the parties;
>
> (2) Their contacts to the events giving rise to the dispute, including the place of conduct and injury;
>
> (3) The domicile, habitual residence, or place of business of the parties;
>
> (4) The state in which the relationship between the parties was centered;
>
> (5) Deterring wrongful conduct;
>
> (6) Repairing the consequences of the injurious acts;
>
> (7) The relationship of each state to the parties and the dispute; and
>
> (8) The policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*See Arabie*, 89 So. 3d at 315-16. "'Th[is] listing of [factual] contacts is neither exhaustive nor hierarchical, and is intended to discourage a mechanistic counting of contacts as a means of selecting the applicable law. The evaluation of factual contacts should be qualitative rather than quantitative, and should be made in the light of the policies of each contact-state that are pertinent to the particular issue in dispute.'" *Id.* (alterations omitted) (quoting La. Civ. Code art. 3542 revision cmt. (a)).

As to the first factor, each state's pertinent contacts with the parties, Walmart urges the application of Louisiana law because Louisiana is the only state that had contacts with both parties.[14] Lytle, on the other hand, urges the application of Arkansas law because Arkansas is the location of Walmart's headquarters.[15] Here, the first factor favors the application of Louisiana law because Walmart owns and operates the store in Louisiana where the accident occurred. Lytle was physically present in Louisiana when she was injured. Lytle's Florida domicile does not detract from the fact that both parties had contacts with Louisiana with respect to the accident at issue. In contrast, only Walmart had contact with Arkansas. *See Davidson*, 2019 WL 13218147, at *5 (finding that the first factor favored Louisiana law when the plaintiff was injured at a Walmart store in Louisiana).

The second factor, the parties' contacts to the events giving rise to the dispute, is neutral for the same reasons it was in *Davidson*: "As explained above, the plaintiff plausibly shows that the injurious conduct occurred in Arkansas, but the plaintiff sustained her injuries in Louisiana. Therefore, Louisiana and Arkansas had equal contacts with the parties." *Id.*

---

[14] R. Docs. 8-1 at 4-5; 15 at 2.
[15] R. Doc. 14 at 4.

The third factor, the domicile, habitual residence, or place of business of the parties, is also neutral. Walmart is a corporate citizen of Delaware and Arkansas, but it operates stores nationwide, including in Louisiana. Lytle is a resident and domiciliary of Florida.

The fourth factor, the state in which the relationship between the parties was centered, heavily favors Louisiana because that is where the accident occurred. It is immaterial that Lytle may have shopped at Walmart stores in other states. The parties' contact that led to Lytle's injury and this litigation occurred in Louisiana. *Id.* (finding that the fourth factor "heavily favors imposition of Louisiana law" because the parties' contact arose from the accident which occurred in Louisiana).

The fifth factor is neutral. As the *Davidson* court explained, "[t]he *Arabie* court found this [factor] to be neutral under substantially similar circumstances: 'the fifth factor, deterring wrongful conduct, appears to favor the imposition of punitive damages, the purpose of which is to punish wrongful conduct. The strength of this factor, however, is diminished by Louisiana's policy disfavoring punitive damages in general.'" *Id.* (alteration omitted) (quoting *Arabie*, 89 So. 3d at 318).

Similarly, the sixth factor, repairing the consequences of injurious acts, is also neutral because, as the Louisiana supreme court observed in *Arabie*, compensatory damages serve this purpose. *Id.* (citing *Arabie*, 89 So. 3d at 318).

As to the seventh factor, the relationship of each state to the parties and the dispute, Walmart urges the application of Louisiana law because, as the location of the accident, Louisiana is the only state connected to both parties.[16] Lytle, on the other hand, argues that this factor favors Arkansas law because Arkansas is where the offending corporate-level decisions were made.[17]

---

[16] R. Docs. 8-1 at 7; 15 at 3-4.
[17] R. Doc. 14 at 5.

9

She also argues that there is "no relationship" between Louisiana and the parties because she is a Florida domiciliary.[18]  Here, as in *Davidson*, the seventh factor weighs in favor of applying Louisiana law because Walmart operates a store, the accident occurred, and suit was filed, in Louisiana.  *See id.* (finding that the seventh factor favored Louisiana law under similar facts).

Finally, the eighth factor – the policies and needs of the interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state – favors the application of Louisiana law.  Again, as explained in *Davidson*: "the corporate defendant domiciled out-of-state could not have reasonably foreseen that a tort claim in another state would be governed by the law of its domiciliary state.  Instead, it would be expected that a tort incident occurring in Louisiana would be governed by Louisiana law." *Id.* (collecting cases).  Here, as in *Davidson*, it is unlikely that Walmart thought safety policies, shelving design, and produce stocking "decisions made in Arkansas would result in the imposition of Arkansas law" when a wet floor allegedly caused a customer to slip and fall in Louisiana.  *Id.*  Thus, the eighth factor weighs in favor of applying Louisiana law.

While half of the factors support the application of Louisiana law, and the other half are neutral, not one factor favors applying Arkansas law.  This is more than a mechanistic counting of contacts but represents a decisive tilt toward the policies of Louisiana that are pertinent to the issues raised in this lawsuit.  Accordingly, the Court finds that it is appropriate to consider Walmart a Louisiana domiciliary for purposes of the choice-of-law analysis.  Given that finding, and because punitive damages are not permitted under Louisiana law and thus are not permitted under

---

[18] *Id.*

Civil Code article 3546 (*i.e*, the law of the state where Walmart was domiciled), Walmart's motion to dismiss is GRANTED.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Walmart's motion to dismiss Lytle's punitive damages claim pursuant to Rule 12(b)(6) (R. Doc. 8) is GRANTED, and Lytle's punitive damages claim is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 18th day of April, 2024.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE